# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| DAVID ALAN NOVOSELSKY,<br><br>                     Plaintiff,<br><br>v.<br><br>CRISTINA ZVUNCA, *as Supervised Administrator of the Estate of Claudia Zvunca*, JEANINE L. STEVENS, and F. JOHN CUSHING, III,<br><br>                     Defendants. | Case No. 17-CV-427-JPS<br><br><br>**ORDER** |

In this action, Plaintiff, David Alan Novoselsky ("Novoselsky"), seeks this Court's guidance on who should be paid sanctions awards entered against him in Illinois state court in favor of Defendants Jeanine L. Stevens ("Stevens") and F. John Cushing, III ("Cushing"). He also raises a breach-of-contract claim against Defendant Cristina Zvunca, in her capacity as supervised administrator of the estate of her deceased mother, Claudia Zvunca (the "Estate"). Because of bedrock limitations on the jurisdiction of federal district courts, the Court is without authority to address the merits of either claim. Defendants have moved to dismiss the complaint, and for the reasons stated below, their motions will be granted.

**1.     BACKGROUND**

The morass of litigation that precedes the matter before the Court is daunting but is largely irrelevant to the disposition of this case. Stated briefly, Claudia Zvunca was killed in 2002 when she was struck by a Greyhound bus. *Zvunca ex rel. Klein v. Greyhound Lines, Inc.*, 530 F. App'x

672, 672 (10th Cir. 2013). Her eight-year-old daughter, Cristina, witnessed her death. *Id.*

An onslaught of litigation, and litigation on that litigation, followed Claudia's death. The Appellate Court of Illinois summarized this legal quagmire, stating that "from the tragic, but relatively straightforward, facts regarding Claudia Zvunca's death, arose at least 13 lawsuits in various state and federal courts. Among these were legal malpractice suits and two wrongful death actions, proceeding simultaneously in Illinois and Colorado." *Cushing v. Greyhound Lines, Inc.*, 991 N.E.2d 28, 33 (Ill. Ct. App. 2013). Given the plethora of simultaneously pending actions and the number of parties involved, "the question of 'who represented whom' was an issue" throughout all the proceedings. *Cushing v. Greyhound Lines, Inc.*, No. 1–10–3176, 2013 WL 2404044, at *9 (Ill. Ct. App. May 30, 2013). Novoselsky was the primary instigator of the chaos, often backed by Claudia Zvunca's widow, Tiberiu Klein. *See id.*

For purposes of this lawsuit, only one portion of the long history of these proceedings is relevant. Cushing and Stevens, both attorneys, represented Cristina and the Estate in the wrongful death matter in Illinois. Novoselsky, looking to usurp their position, filed a lawsuit against them in Illinois state court alleging legal malpractice and fraud. Eventually, Novoselsky succeeded in taking over the reins of the wrongful death case, but his victory and the settlement he secured were invalidated on appeal. *See Cushing*, 991 N.E.2d at 99.

Cushing and Stevens then filed motions for sanctions against Novoselsky under Illinois Supreme Court Rule 137, the Illinois equivalent to Federal Rule of Civil Procedure 11, based on Novoselsky's allegations in the malpractice case. Cristina and the Estate were not permitted to

intervene in the sanctions proceedings. The judge presiding over them, Judge Lorna Propes, found that Novoselsky had repeatedly violated Rule 137 through his filings in the malpractice action, in which he manufactured false accusations against Stevens and Cushing for the purpose of ousting them from the wrongful death case. Judge Propes awarded sanctions to Cushing and Stevens as follows:

> A monetary sanction in the amount of $25,000 is imposed on Novoselsky in favor of John Cushing. A further sanction in the amount of $75,000 is imposed in favor of Jeanine Stevens. The total of $100,000 will be paid to the Estate of Claudia Zvunca and held in an account for the estate, to be opened and maintained by an attorney to be named under separate order of this court. The funds will remain in the account until the ultimate disposition of the wrongful death case. At such time, should there be no recovery in the wrongful death case, the funds plus interest, shall be distributed to the movants in their proportionate share. Should there be a recovery in the wrongful death case, the funds plus interest, shall be applied to the movants' claims of fees and costs only.

(Docket #1-1 at 20). The judge later modified her order to require deposit of the sanctions amounts on a date certain with the Clerk of Court instead of an attorney. *Id.* at 21.

Novoselsky appealed both of these orders. Before the appeals were resolved, however, he filed for bankruptcy protection in this District in *In re Novoselsky*, Case No. 14-bk-29136-GMH (Bankr. E.D. Wis.). Cushing and Stevens filed proofs of claim in the bankruptcy relating to their sanctions awards, but Novoselsky contested them, arguing that the awards were payable only to the Estate, not to Cushing or Stevens personally. Bankruptcy Judge Halfenger disagreed and lifted the automatic stay to allow the sanctions proceedings, including Novoselsky's appeal, to proceed

in Illinois state court. (Case No. 14-ap-2572-GMH (Bankr. E.D. Wis.), Docket #18 at 2–3).

Novoselsky eventually dismissed his appeal of the sanctions order. He then filed an adversary proceeding in his bankruptcy case, seeking an order that the awards were due the Estate and that the Estate was not entitled to payment because it had not filed a proof of claim. That adversary proceeding remains pending, and Judge Halfenger has also permitted litigation of the sanctions issues in Illinois state court, where Judge Propes was assigned to the case on remand. *See* (Case No. 16-ap-2224-GMH (Bankr. E.D. Wis.), Docket #11 at 1).

Novoselsky filed the instant action in March 2017. In his complaint, he alleges that although Judge Propes ordered him to pay $100,000, she left the actual payee to be determined at a later date during resolution of the wrongful death action. That case was settled in early 2016, and Novoselsky now requests several declarations of rights. First, he asks for a declaration that he owes the sanctions awards to the Estate, not Cushing or Stevens. Second, he requests a declaration that the amount he owes has been satisfied and is no longer due. He reasons that two separate actions, one federal and one in Illinois state court, were filed by the Estate against him, and in each the Estate sought to recover the $100,000 total award resulting from Judge Propes' sanctions order. He alleges that the actions were dismissed with prejudice and therefore have extinguished his liability for the sanctions awards.

Finally, Novoselsky joins a separate breach of contract claim against the Estate for unpaid attorney's fees which were allegedly awarded to him by an Illinois court for his work in connection with the wrongful death action.

## 2. DISCUSSION

The number of problems with Novoselsky's complaint is staggering, particularly since he is a lawyer. Defendants contend that the complaint fails to state any claims and fails to establish subject-matter jurisdiction, personal jurisdiction, and venue in this Court. The Court will address only subject-matter jurisdiction, as it must be the first item of business for a federal court and review of the pertinent authorities demonstrates that subject-matter jurisdiction is lacking in this case. *See Garry v. Geils*, 82 F.3d 1362, 1365 (7th Cir. 1996).

Novoselsky's claims run afoul of the *Rooker–Feldman* doctrine, which provides that lower federal courts do not have subject matter jurisdiction over claims seeking review of state court judgments. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415–16 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482–86 (1983). The doctrine applies not only to claims that were actually raised before the state court, but also to claims that are inextricably intertwined with state-court determinations. *See Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999); *Feldman*, 460 U.S. at 482 n.16.

The purpose of *Rooker–Feldman* is to funnel claims through the proper channels. A state-court order should be appealed to the state's appellate courts, with the U.S. Supreme Court sitting in final review if appropriate. *Long*, 182 F.3d at 554; *Centres, Inc. v. Town of Brookfield*, 148 F.3d 699, 701–02 (7th Cir. 1998). *Rooker–Feldman* emphasizes the notion that generally only the Supreme Court, not federal district courts, reviews the decisions of state courts. *Garry*, 82 F.3d at 1365. The doctrine also embodies respect for state courts by recognizing that "a decision by a state court,

however erroneous, is not itself a violation of the Constitution actionable in federal court." *Homola v. McNamara*, 59 F.3d 647, 650 (7th Cir. 1995).

In analyzing an assertion that *Rooker–Feldman* bars an action, "the fundamental and appropriate question to ask is whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment." *Garry*, 82 F.3d at 1365. If the injury alleged by the plaintiff was caused by the state court judgment itself or is inextricably intertwined with it, there is no jurisdiction. *Long*, 182 F.3d at 555. The Seventh Circuit has therefore developed a distinction between "a federal claim alleging injury caused by a state court judgment," which is barred, and "a federal claim alleging a prior injury that a state court failed to remedy," which is not. *Centres*, 148 F.3d at 702; *Kamilewicz v. Bank of Boston Corp.*, 92 F.3d 506, 510 (7th Cir. 1996) (*Rooker–Feldman* does not bar a claim that is "independent" of the state-court judgment).

Nevertheless, *Rooker–Feldman* is not limited solely to state-court losers trying to secure a second bite at the apple. It also "prevents federal courts from second-guessing state court decisions by barring the lower federal courts from hearing de facto appeals from state-court judgments[.]" *Bianchi v. Rylaarsdam*, 334 F.3d 895, 898 (9th Cir. 2003). Thus, there is no jurisdiction where the claims raised in the federal action are inextricably intertwined with the state court's decision "such that the adjudication of the federal claims would undercut the state ruling or require the district court to interpret the application of state laws or procedural rules[.]" *Id.* (citing *Feldman*, 460 U.S. at 483 n.16). Put differently, "lower federal courts lack subject matter jurisdiction over a case if the exercise of jurisdiction over that case would result in the reversal *or* modification of a state court judgment." *Hachamovitch v. DeBuono*, 159 F.3d 687, 693 (2d Cir. 1998)

(emphasis added); *Garry*, 82 F.3d at 1366. Although the *Rooker–Feldman* doctrine is narrow, courts "are still barred from evaluating claims. . .where all of the allegedly improper relief was granted by state courts." *Kelley v. Med-1 Solutions, LLC*, 548 F.3d 600, 605 (7th Cir. 2008).

In his declaratory judgment claims, Novoselsky alleges "injury" in the lack of guidance as to who should be paid the sanctions awards. The injury, such as it is, is a lack of specificity in the order itself. As such, it stems directly from the order and is not reviewable in this Court. *See Long*, 182 F.3d at 557 (finding *Rooker–Feldman* applied to a due-process claim where the alleged injuries "were complete only when the Circuit Court entered the eviction order against [the plaintiff]"); *Ritter v. Ross*, 992 F.2d 750, 754 (7th Cir. 1993) (the plaintiffs admitted that "but for the tax lien foreclosure judgment in Rock County Circuit Court, they would have no complaint"); *GASH Assoc. v. Village of Rosemont, Ill.*, 995 F.2d 726, 729 (7th Cir. 1993) ("GASH did not suffer an injury out of court and then fail to get relief from state court; its injury came from the judgment confirming the sale[.]").

Compare this case to *Long*, where the plaintiff alleged that the defendants engaged in fraud and unlawful debt-collection practices before obtaining a state-court eviction order. *Long*, 182 F.3d at 555. Those injuries were caused by the defendants, not the court, and could be considered separately from the eviction order. *Id.* Here, by contrast, Novoselsky does not allege that Cushing, Stevens, or the Estate did anything wrongful to procure the sanctions order, or that they had a hand in drafting its allegedly ambiguous language. The only problem Novoselsky has is with the order as written by Judge Propes.

Even assuming, as Novoselsky strenuously contends, that he is not trying to avoid payment of the sanctions awards, (Docket #23 at 6–7),[1] asking how to interpret the sanctions order is a matter for the state court that issued it, and any such decision should be reviewed by the state's appellate apparatus. Clarifying the order is, at a minimum, inextricably intertwined with the order itself, and the Court is in no position to opine on it. *Ritter*, 992 F.2d at 754 (noting that while no bright line establishes what claims are "inextricably intertwined" with state court judgments, the core inquiry is "whether 'the district court is in essence being called upon to review the state court decision'") (quoting *Feldman*, 460 U.S. at 483–84 n.16). Indeed, Cushing and Stevens have to some extent litigated the interpretation of the sanctions order before Judge Propes. *See* (Docket #1-1 at 21). Novoselsky should have done the same. *Long*, 182 F.3d at 557–58 (finding that a plaintiff must have had a reasonable opportunity to raise the issue in state court to find that it is inextricably intertwined with the state-court judgment); *Kelley*, 548 F.3d at 606 (observing that a plaintiff need only have had "*any* reasonable opportunity," not a good one, to raise his potential claim in state court) (emphasis in original).[2] This Court is not a proper substitute.

---

[1]To be sure, it is clear to the Court that he is, in fact, trying to avoid paying the sanctions awards. Novoselsky seeks a declaration that he owes this money to the Estate and that the Estate's claim has been extinguished by the disposition of other actions. (Docket #1 ¶¶ 14–24). Alternatively, it appears that he means to assert in his bankruptcy proceedings that he cannot pay the Estate because it never filed a proof of claim. Either way, Novoselsky does not want to pay. *See* (Docket #17-6 ¶¶ 22–38).

[2]If Judge Propes has declined or will decline to hear such arguments, *see* (Docket #23 at 3), or if the Illinois sanctions matter has been fully and finally disposed of, *see* (Docket #31-1 at 2–3), it is of no moment to this Court's jurisdiction.

The same result obtains for the separate breach-of-contract claim Novoselsky raises against the Estate. In that count, Novoselsky claims that he was awarded $300,000 in fees by an Illinois court for legal services he provided to the Estate. (Docket #1 ¶¶ 30–31). The Estate has allegedly paid only $149,000. *Id.* ¶ 32. Without explanation, Novoselsky asserts that its failure to pay the balance is a breach of contract. *Id.* ¶ 33.

But where is this supposed contract? Properly understood, Novoselsky is not asserting a breach of a contract claim. According to him, the Estate's liability pursuant to the contract for legal services was decided by an Illinois court. Novoselsky is in reality asking this Court to enforce the state-court fee award. Such a claim is foreclosed in this forum by *Rooker–Feldman*. Requesting that this Court intervene in the enforcement of the Illinois court's fee award is not appropriate, as it would require the Court to evaluate the fee award and the reasons for the Estate's alleged noncompliance against the backdrop of Illinois law and procedure. *See*

---

Whether Novoselsky has lost his chance to seek state-court review of the sanctions order, the fact remains that review of that order cannot be had here. Novoselsky filed a motion for leave to submit a sur-reply in order to argue that the state court matters have been dismissed for good, apparently in answer to the Estate's request for abstention and to suggest that this Court can now step in to clarify the order's meaning. *See* (Docket #31). The brief cites no law whatsoever; it consists of eight pages of Novoselsky's stream-of-consciousness musings. *See* (Docket #31-1). The Court has reviewed the submission and finds that it adds nothing to the record and has no effect on the disposition of the case. For these reasons, and because sur-replies are never permitted as a matter of course (and are indeed disfavored), the motion for leave to file the sur-reply will be denied. *See Schmidt v. Eagle Waste & Recycling, Inc.*, 599 F.3d 626, 631 n.2 (7th Cir. 2010) (observing that granting leave to file a sur-reply is within the district court's discretion); *Groshek v. Time Warner Cable, Inc.*, Case No. 15–C–157, 2016 WL 4203506, at *4 (E.D. Wis. Aug. 9, 2016) (noting that sur-replies are permitted "only rarely; the local rules provide for a motion, a response and a reply, and in the vast majority of cases, this is sufficient"); *C&F Packing Co., Inc. v. IBP, Inc.*, 916 F. Supp. 735, 741 (N.D. Ill. 1995) (rejecting a sur-reply as the non-movant's "attempt to get in the 'last word'" on the motion).

*Kelley*, 548 F.3d at 605; *see also Beaudoin v. Mich. Racing Inc.*, 30 F. App'x 575, 576 (6th Cir. 2002) (noting that "the appropriate recourse. . .for the alleged violations of [a] state court's order. . .[is] to advise the state court of the alleged violations and to pursue the matter in the [state] courts"). Thus, this claim too must be dismissed.

In any event, even if *Rooker–Feldman* does not bar the fee claim against the Estate, and even if it is viewed as a breach of contract, there is no basis for this Court's subject-matter jurisdiction. There is undoubtedly no federal question raised in a dispute over enforcement of an attorney's fee award issued by a state court or the underlying contract for legal representation. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 382 (1994).[3] Novoselsky maintains that the Declaratory Judgment Act, 28 U.S.C. § 2201, itself provides a basis for subject-matter jurisdiction, (Docket #23 at 4–5), but he is incorrect, *Rueth v. U.S. E.P.A.*, 13 F.3d 227, 231 (7th Cir. 1993) (the Act "is not an independent grant of jurisdiction, rather jurisdiction must be predicated on some other statute").

Additionally, there is no diversity between the parties, as the Estate is domiciled in Illinois, *see* 28 U.S.C. § 1332(c)(2), and Novoselsky transferred all his pending legal claims, including the instant fee claim, to his Illinois professional corporation in 2012, *see* (Case No. 14-bk-29136-

---

[3]Indeed, when properly construed as an attempt to enforce a state-court fee judgment, it becomes clear that this Court has no authority to entertain Novoselsky's claim. Federal district courts may only register and enforce judgments rendered by other federal courts, not state courts. *See* 28 U.S.C. § 1963; *Euro-American Coal Trading, Inc. v. James Taylor Mining, Inc.*, 431 F. Supp. 2d 705, 708 (E.D. Ky. 2006); *Marbury Law Group, PLLC v. Carl*, 729 F. Supp. 2d 78, 83 (D.D.C. 2010).

GMH, (Bankr. E.D. Wis.), Docket #279 at 3).[4] Finally, although Novoselsky requests that the Court exercise supplemental jurisdiction over this claim, there is no existing claim within the Court's original jurisdiction upon which Novoselsky could premise such a request. *See* 28 U.S.C. § 1367(a). Consequently, the Court also lacks jurisdiction over Novoselsky's fee claim against the Estate.[5]

---

[4]Novoselsky says that his transfer of assets to his professional corporation did not include the instant claim for fees. (Docket #24 at 4). He offers no evidence other than the unsworn assertion that the transfer was only of existing lines of credit and that "the matter had been paid and closed out prior to that time" (whatever that means). *Id.* His belief is contrary to the plain language of the assignment, *see* (Docket #30 at 13), and the view of the bankruptcy court, which has said several times that Novoselsky's fee claims were transferred to his professional corporation and have been abandoned by the bankruptcy trustee, *see, e.g.*, (Case No. 16-ap-2224-GMH (Bankr. E.D. Wis.), Docket #11 at 3); (Case No. 14-bk-29136-GMH (Bankr. E.D. Wis.), Docket #938 at 3). As a result, Novoselsky has not met his burden to convince this Court that the transfer did not include his fee claim and, consequently, that there is diversity between the parties. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009) (facing a factual attack to the premises of jurisdiction, a court may look to evidence beyond the allegations of the complaint, and the plaintiff bears the burden to rebut evidence contradicting the existence of jurisdiction).

[5]As a final alternative basis for dismissing claims against the Estate, the Court finds it lacks personal jurisdiction over the Estate. Novoselsky's own allegations belie the existence of personal jurisdiction, since he alleges that he represented the Estate, an Illinois entity, in Illinois state court, and that the eventual fee award was issued by an Illinois court. Nothing ties this claim to the State of Wisconsin other than Novoselsky's residence here. The Due Process Clause is not concerned with his convenience but the connections of the putative defendant with the forum state. *See Kipp v. Ski Enter. Corp of Wis., Inc.*, 783 F.3d 695, 697–98 (7th Cir. 2015) (noting that personal jurisdiction requires either that the defendant have "constant and pervasive contacts" with the forum State or that the defendant's specific conduct at issue was directed at the forum State). No such connections exist—or, if they do, Novoselsky has not explained them. *Tyler v. Runyon*, 70 F.3d 458, 464–65 (7th Cir. 1995) (recognizing that courts need not and should not expend limited judicial resources in researching and refining arguments the parties do not adequately support). Thus, the claims against the

3. **CONCLUSION**

For the reasons given above, this Court lacks jurisdiction to hear the claims Novoselsky asserts in this case. To the extent he desires review of these questions, he must seek it elsewhere if he can.

Accordingly,

**IT IS ORDERED** that Defendants F. John Cushing, III and Jeanine L. Stevens' motion to dismiss the complaint (Docket #16) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendant Cristina Zvunca's motion to dismiss the complaint (Docket #20) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendant Cristina Zvunca's motion to join in the other Defendants' motion to dismiss the complaint (Docket #22) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's motion to withdraw his motions for preliminary injunctive relief (Docket #28) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's motion for leave to file a sur-reply (Docket #31) be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED** together with costs as taxed by the Clerk of the Court.

The Clerk of the Court is directed to enter judgment accordingly.

---

Estate cannot proceed. Although the Estate did not raise this argument directly (it merely adopted a similar argument raised by Cushing and Stevens), the Court would find this an independent, sufficient reason for dismissal of the Estate.

Dated at Milwaukee, Wisconsin, this 17th day of July, 2017.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge