## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

DAVID ALAN NOVOSELSKY,

                 Plaintiff,

v.

CRISTINA ZVUNCA, *as Supervised Administrator of the Estate of Claudia Zvunca*, JEANINE L. STEVENS, and F. JOHN CUSHING, III,

                 Defendants.

Case No. 17-CV-427-JPS

**ORDER**

On July 17, 2017, the Court issued an order dismissing this action for lack of subject-matter jurisdiction. *Novoselsky v. Zvunca*, Case No. 17-CV-427-JPS, 2017 WL 3025870, at *1 (E.D. Wis. July 17, 2017). A month later, Defendants Jeanine L. Stevens ("Stevens") and F. John Cushing, III ("Cushing") (collectively, "Movants") filed a motion for sanctions against Plaintiff David Alan Novoselsky ("Novoselsky"). (Docket #35). Movants argue that Novoselsky's complaint was frivolous and is sanctionable under Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, and the Court's inherent authority. The motion is fully briefed and, for the reasons stated below, the Court will grant Movants their reasonable attorney's fees and expenses under Rule 11.

1.      **BACKGROUND**

The history between these parties is long and troubled. For brevity's sake, the Court will confine itself to the facts necessary to the disposition of the present motion. The interested reader may consult the prior decisions

of this and other courts for further background information. *See generally Novoselsky*, 2017 WL 3025870; *Zvunca ex rel. Klein v. Greyhound Lines, Inc.*, 530 F. App'x 672 (10th Cir. 2013); *Cushing v. Greyhound Lines, Inc.*, 991 N.E.2d 28 (Ill. Ct. App. 2013).

Novoselsky filed the complaint in this case on March 22, 2017. (Docket #1). The complaint concerned primarily a sanctions award entered against him by Judge Propes of the Circuit Court of Cook County, Illinois in favor of Movants—specifically, $75,000 to Stevens and $25,000 to Cushing. *Id.* He alleged that did not owe the sanctions either to Movants or the estate of Claudia Zvunca (the "Estate"), his former client. *Id.*[1]

Movants filed a motion to dismiss May 22, 2017. (Docket #16). The motion raised the following grounds for dismissal:

a. the Declaratory Judgment Act does not confer jurisdiction, as Novoselsky had claimed;

b. there was no subject matter jurisdiction because the amount in controversy was not satisfied as to any defendant for purposes of diversity jurisdiction;

c. there was no subject-matter jurisdiction in the district court under the *Rooker–Feldman* doctrine;

d. personal jurisdiction did not exist over Cushing and Stevens; and

f. venue was improper in this District.

(Docket #17 at 8–19). After filing the motion, Movants' counsel sent Novoselsky a safe harbor letter on May 25, 2017 under Federal Rule of Civil

---

[1] He also asserted a separate breach of contract claim against Cristina Zvunca, in her capacity as supervised administrator of her deceased mother's estate. The Court dismissed that claim as well. *Novoselsky*, 2017 WL 3025870, at *5. The Estate did not join in the sanctions motion.

Procedure 11(c)(2), outlining the alleged legal deficiencies in the complaint and asking him to withdraw the filing. (Docket #35-1).

Novoselsky did not withdraw his complaint. Instead, he filed a brief in opposition to the motion to dismiss on June 12, 2017. (Docket #23). He variously argued that:

    a.    the Declaratory Judgment Act is a stand-alone basis for subject-matter jurisdiction;

    b.    the Complaint satisfied the amount in controversy requirement because the two sanctions awards could be aggregated;

    c.    the *Rooker–Feldman* doctrine did not deprive the district court of subject-matter jurisdiction because the relief sought was not a reversal of the state-court sanctions order;

    d.    personal jurisdiction existed over Cushing and Stevens because they filed adversary proceedings in this Court against Novoselsky in connection with his bankruptcy proceeding; and

    e.    venue is proper in this District because sufficient relevant events occurred here.

*Id.* at 4–11. Movants take issue with the merit of these arguments, but that will be addressed later on.

While Movants' motion to dismiss was pending, Novoselsky filed two motions of his own. On June 29, 2017, he moved for leave to file a sur-reply. (Docket #31). The Court denied the motion in its dismissal order, describing the proposed sur-reply as "cit[ing] no law whatsoever; it consists of eight pages of Novoselsky's stream-of-consciousness musings. . .which adds nothing to the record and has no effect on the disposition of the case." *Novoselsky*, 2017 WL 3025870, at *4 n.2. Next, on July 13, 2017, Novoselsky filed a motion asking the Court to stay consideration of the motion to

dismiss because he planned to seek relief from another state-court order in the bankruptcy court. (Docket #32). The Court dismissed the case four days later, and Movants did not respond to the July 13 motion before the dismissal was entered.[2]

The Court's dismissal order focused on the lack of subject-matter jurisdiction over Novoselsky's claims under the *Rooker–Feldman* doctrine. *Novoselsky*, 2017 WL 3025870, at *3–5. The Court did not opine on Movants' contentions that the amount-in-controversy requirement was not satisfied, that personal jurisdiction was lacking as to them, or that venue was improper in this District. *Id.* at 2 ("The Court will address only subject-matter jurisdiction, as it must be the first item of business for a federal court and review of the pertinent authorities demonstrates that subject-matter jurisdiction is lacking in this case.").

## 2.    DISCUSSION

Federal Rule of Civil Procedure 11 imposes a set of duties on those who file papers with the court. It also provides for an appropriate sanction to be imposed if those duties are violated. Rule 11(b) states, in pertinent part, that

> [b]y presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

---

[2] Novoselsky also filed two other expedited motions for emergency injunctive relief, but those were quickly withdrawn. *See* (Docket #25, #26, #28).

> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law[.]

Fed. R. Civ. P. 11(b)(1)–(2). The Rule grants a court discretion to impose an appropriate sanction for violations of these obligations, which may include "nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." *Id.* 11(c)(4).

The duties imposed in Rule 11—coupled with the available sanctions—ensure that the "powerful, intimidating, and often expensive" machinery of the federal judiciary "[is] engaged only to address claims and defenses that have a reasonable basis in fact and law and that are asserted only for a proper purpose." *N. Ill. Telecom, Inc. v. PNC Bank, N.A.*, 850 F.3d 880, 883 (7th Cir. 2017). Toward that end, the Rule imposes an objective standard of reasonableness on a party's or lawyer's action. *Id.* at 885. As the Seventh Circuit has explained, the Rule "[leaves] no room for an 'empty head, pure heart' defense." *Id.* Additionally, in this context, a bad claim spoils the bunch; one cannot avoid sanctions for frivolous claims simply because they were included with one or more non-frivolous claims. *Reed v. v. Great Lakes Cos., Inc.*, 330 F.3d 931, 936 (7th Cir. 2003).

In this case, Movants seek sanctions for purported violations of Rule 11(b)(1) and (2). That is, Movants assert that several of Novoselsky's legal contentions on jurisdictional issues were frivolous, and they say that the entire case was brought for the improper purpose of avoiding or delaying payment of Judge Propes' sanctions award. Sanctions are proper only on

the former ground. To arrive at this conclusion, the Court will first analyze the safe-harbor letter Movants sent to Novoselsky on May 25, 2017, then turn to the sanctions motion itself, and finally consider the arguments about Novoselsky's frivolous contentions.[3]

## 2.1    The Safe Harbor Letter

The bulk of Novoselsky's opposition to the instant motion is that Movants' May 25 letter falls short of the requirements of Rule 11(c)(2). That Subpart sets out the protocols for obtaining sanctions should a party violate one of the duties imposed by Subpart (b):

> (2) Motion for Sanctions. A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

Fed. R. Civ. P. 11(c)(2). This provision is designed to give an offending party a chance to withdraw a filing that allegedly violates Subpart (b). *N. Ill.*

---

[3]One initial matter to consider is which filings are properly the subject of Movants' request for Rule 11 sanctions. Surely the complaint is, as Movants served their May 25 letter on Novoselsky warning him about the defects therein. What about Novoselsky's briefs on the motion to dismiss? Movants sent similar warning letters relating to these documents, but because the 21-day safe harbor period did not elapse before the Court dismissed the case, they do not seek sanctions for assertions made in those particular documents. (Docket #35 at 7 n.2). Of course, this distinction makes little practical difference here. Rule 11(b) permits sanctions when a party "later advocat[es]" a position taken in an earlier filing, *see Fabriko Acquisition Corp. v. Prokos*, 536 F.3d 605, 610 (7th Cir. 2008), and so the Court can and will consider Novoselsky's later briefs as evidence of whether and to what extent the allegations of his complaint were frivolous.

*Telecom*, 850 F.3d at 887.

Most Circuit courts require strict compliance with this provision. In this Circuit, however, a party seeking sanctions may obtain them after achieving only "substantial compliance" with Rule 11(c)(2). *Id.*; *Nisenbaum v. Milwaukee Cty.*, 333 F.3d 804, 808 (7th Cir. 2003). A case-by-case approach has developed here whereby certain "warning shots" to the offending party will suffice even if they do not take the form of a prospective Rule 11 motion. *N. Ill. Telecom*, 850 F.3d at 887. The key inquiry is whether the party seeking sanctions has given notice to the offending party that his filing is being challenged as violative of Rule 11(b), and why. *See id.*; *Nisenbaum*, 333 F.3d at 808; *Methode Elecs., Inc. v. Adam Techs., Inc.*, 371 F.3d 923, 927 (7th Cir. 2004); *Matrix IV, Inc. v. Am. Nat'l Bank & Trust Co. of Chicago*, 649 F.3d 539, 552–53 (7th Cir. 2011). This substantial compliance theory is unpopular, even among judges of this Circuit, but it remains the law. *See N. Ill. Telecom*, 850 F.3d at 887.

Novoselsky does not challenge the substantial compliance doctrine itself. Instead, he claims that Movants' letter simply does not provide sufficient notice of the alleged deficiencies in his complaint. The May 25 letter provides, in pertinent part:

> I write this pursuant to Fed. R. Civ. P. 11(c)(2), on behalf of defendants F. John Cushing III and Jeanine L. Stevens.
>
> As detailed in our motion to dismiss and accompanying memorandum of law, which are incorporated herein, under long-established law the court lacks both subject matter jurisdiction and personal jurisdiction over the captioned matter, and venue is improper in the Eastern District of Wisconsin. There is no subject matter jurisdiction both because the amount in controversy is not satisfied as to Cushing or Stevens (and their respective amounts cannot be aggregated to achieve the amount in controversy), and

because of the *Rooker–Feldman* doctrine. There is no personal jurisdiction under either the Wisconsin long-arm statute or due process because your claims do not arise out of any actions in the Eastern District of Wisconsin. The exhibits and factual allegations of your complaint establish these matters.

A reasonable investigation of the law would have revealed the lack of jurisdiction in federal court and the lack of venue in the Eastern District of Wisconsin; there is no "nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Therefore, the complaint violates Fed. R. Civ. P. 11(b).

Pursuant to Fed. R. Civ. P. 11(c)(2), you have twenty-one (21) days to withdraw your complaint. If you fail to do so, I intend to move for sanctions if and when the complaint is dismissed.

(Docket #35-1 at 1).

Novoselsky argues that while safe-harbor letters are allowed in this Circuit, they "must nonetheless satisfy the same criteria as applied to the draft motion required in other Circuits." (Docket #39 at 2). In his view, the May 25 letter does not pass muster because it is not "materially identical" to the sanctions motion. *Id.* at 2–3. Further, says Novoselsky, a one-page letter full of "bare conclusions" can hardly be expected to give a fulsome warning of potential Rule 11(b) problems. *Id.* at 4.

Novoselsky is right insofar as a safe-harbor letter only authorizes a party to seek sanctions based on the grounds set forth in the letter. *See* Fed. R. Civ. P. 11(c)(2); *Knapp v. Evgeros, Inc.*, 15 C 754, 2017 WL 3668165, at *2 (N.D. Ill. Aug. 24, 2017). He is also correct that one court of the Northern District of Illinois has held that the safe-harbor letter must be "materially identical" to the later-filed motion for sanctions in order to satisfy Rule 11(c)(2). *Knapp*, 2017 WL 3668165, at *2. However, this Court cannot go so far.

While the grounds raised must match from letter to motion, the Court will not require that the letter set forth the entirety of the sanctions argument for each such ground. Doing so would impose needless technicality on the sanctions process. The Seventh Circuit has, at least for the time being, embraced a substantial compliance approach to Rule 11(c)(2), and thus it would be inconsistent to say that one can comply with that Subpart by sending a letter, but the letter must look exactly like the later-filed motion. Surely the purpose of the substantial compliance doctrine is not simply to authorize the use of attorney letterhead. Rather, the doctrine is practical, allowing a party to obtain sanctions if he has reasonably put the offending party on notice that his filing is being challenged as violative of Rule 11(b), including the general reasons therefor. *See N. Ill. Telecom*, 850 F.3d at 887; *Matrix IV*, 649 F.3d at 552 n.5.

On this view of the substantial compliance doctrine, the Court finds that Movants' May 25 letter was sufficient in notifying Novoselsky that his complaint contained legally frivolous contentions as prohibited by Rule 11(b)(2). With respect to that issue, Movants outlined the matters raised in the complaint that allegedly violated Rule 11(b)(2), and they briefly explained their reasons for reaching those conclusions. Thus, the letter was substantially compliant with Rule 11(c)(2).

The letter says nothing, however, about Novoselsky's alleged improper purpose in bringing suit, as proscribed by Rule 11(b)(1). It therefore did not put him on sufficient notice that this would be a potential ground for later Rule 11 sanctions. This is true even if the Court condoned Movants' attempt to incorporate into their letter by reference their entire brief in support of their motion to dismiss. That attempt at incorporation directs Novoselsky to consider Movants' arguments as to why his

jurisdictional contentions were frivolous. True, the motion brief also contained charged words about Novoselsky's alleged forum shopping and nefarious motives, *see* (Docket #17 at 7–8), but Movants did not try to direct Novoselsky's attention to those matters in their letter.

Substantial compliance forgives much about the technicalities of Rule 11(c)(2), but at a minimum the movant must identify to his opponent the kind of Rule 11(b) violation for which he will seek sanctions. The proscriptions of Rule 11(b)(1) and (2) are fundamentally distinct, and neither depends on the other. *See Senese v. Chicago Area I.B. of T. Pension Fund*, 237 F.3d 819, 825 (7th Cir. 2001). As such, a warning about frivolous arguments is no warning at all about improper purpose. Thus, the Court finds that the May 25, 2017 letter served as a proper safe-harbor letter only as to the alleged Rule 11(b)(2) violations.[4]

### 2.2    The Sanctions Motion

Novoselsky next claims that the sanctions motion was untimely because the Court has already dismissed this case. (Docket #39 at 4–5). This contention itself borders on the frivolous. First, it is well settled in this Circuit that a district court retains jurisdiction to hear a Rule 11 motion even after a case is dismissed. *Wojan v. Gen. Motors Corp.*, 851 F.2d 969, 973 (7th Cir. 1988). Further, Rule 11 contains no deadline for filing a motion for sanctions. *Divane v. Krull Elec. Co., Inc.*, 200 F.3d 1020, 1025 (7th Cir. 1999). The Seventh Circuit generally enforces a post-judgment sanctions motion

---

[4]In finding that Movants' letter failed to warn Novoselsky about the prospect of sanctions for a Rule 11(b)(1) violation, the Court expresses no opinion about the propriety of sanctions for the pertinent conduct, including Novoselsky's relentless forum-shopping in the face of adverse rulings and his apparent disdain for the numerous sanctions awards entered against him in prior state and federal cases. *See* (Docket #35 at 8–11).

deadline of ninety days, *Matrix IV*, 649 F.3d at 552, but Movants' motion was well within that time frame.

Novoselsky clearly misreads the district court opinion upon which he relies, *Noonan v. CACH, LLC*, No. 4:15-CV-1305 CAS, 2016 WL 1641405, at *3 (E.D. Mo. Apr. 26, 2016). There, the defendants did not serve their motion for sanctions on the plaintiff prior to dismissal of the case. *Id.* Thus, the plaintiff had no opportunity to cure his alleged violations of Rule 11(b). *Id. Noonan* says nothing about a time limit for filing the sanctions motion with the court after proper notice to the offending party. Besides, Novoselsky had ample time to withdraw his complaint before this case was dismissed, making *Noonan* even less applicable.

### 2.3  Novoselsky's Contentions Were Frivolous

Now that the safe harbor letter and sanctions motion have been found procedurally proper with respect to claimed violations of Rule 11(b)(2), the Court will consider Movants' arguments regarding which of Novoselsky's allegations are sanctionable. Movants point to three such contentions: (1) that jurisdiction could be premised on the Declaratory Judgment Act; (2) that the amount in controversy was satisfied either because of interest accrual or aggregating Stevens' and Cushing's sanctions awards; and (3) that personal jurisdiction existed over Movants. (Docket #35 at 5–7).[5]

The Court agrees that these arguments were frivolous. It will address each in turn. First, and easiest, is Novoselsky's claim that subject-matter

---

[5]"Because Novoselsky did make an actual argument on the *Rooker–Feldman* doctrine, albeit incorrect and unsuccessful, and cited some minimal authority," Movants do not seek sanctions for Novoselsky's opposition to that argument. (Docket #35 at 6 n.1). Movants do not mention improper venue in the sanctions motion, so the Court will not consider that as a basis for sanctions, either.

jurisdiction could be premised on the Declaratory Judgment Act. It cannot. *Rueth v. U.S. E.P.A.*, 13 F.3d 227, 231 (7th Cir. 1993). There is no ambiguity in the case law on this point; in any event, Novoselsky has apprised the Court of none. He should have known that this was an untenable argument.

Second, Novoselsky contended that the amount in controversy was satisfied as to Stevens because Judge Propes's sanctions order "requires not only the payment of the face amount of $75,000 but interest accruing" on that sum. (Docket #23 at 5). However, the diversity statute, 28 U.S.C. § 1332, excludes interest. That statute requires that "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). In her order, Judge Propes awarded Cushing the sum of $25,000 and Stevens $75,000. Neither meets the amount-in-controversy requirement standing alone. *Anthony v. Sec. Pac. Finan. Servs., Inc.*, 75 F.3d 311, 315 n.1 (7th Cir. 1996). Judge Propes' order that interest accrue on the amounts does not change things, since that interest is incidental, arising only by virtue of delay in payment, and is not itself a basis for the present suit. *See Principal Mut. Life. Ins. Co v. Juntunen*, 838 F.2d 942, 943 (7th Cir. 1988); 14AA Charles Alan Wright et al., Fed. Prac. & Proc. § 3712 (2011). Whatever post-judgment interest has accrued on these awards cannot be considered.

Moreover, the two amounts cannot be aggregated in order to cross the jurisdictional threshold; that is permitted "only if the defendants are jointly liable; however, if the defendants are severally liable, plaintiff must satisfy the amount in controversy requirement against each individual defendant." *LM Ins. Corp. v. Spaulding Enters. Inc.*, 533 F.3d 542, 548 (7th Cir. 2008). Novoselsky did not credibly contend that payment to Stevens would affect his obligation to Cushing, or vice versa, other than to baldly state that

Judge Propes awarded them as a "unitary sum." (Docket #23 at 6); *Batson v. Live Nation Entm't, Inc.*, 746 F.3d 827, 833 (7th Cir. 2014) (finding an argument "forfeited because it was perfunctory and underdeveloped"). A plain reading of her order reveals that the two awards are distinct despite being issued at the same time. Thus, this argument too was wholly meritless.[6]

Third, and finally, is Novoselsky's allegation that personal jurisdiction existed over Movants. The Fourteenth Amendment's Due Process Clause protects a defendant from being haled into court in a state where it has no meaningful connections. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 464 (1985). Due process requires that for personal jurisdiction to exist over a nonconsenting, out-of-state defendant, the defendant must have "certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

However, for specific personal jurisdiction—the only type arguably relevant in this case—mere minimum contacts are not enough. *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 429 (7th Cir. 2010). It is also important that the plaintiff's claims arise from or relate to the defendant's contacts with the forum State. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984); *Int'l Shoe*, 326 U.S. at 317–18. Specific personal jurisdiction exists

---

[6]Part of Novoselsky's theory in the case was that he owed the entire $100,000 (plus interest) to the Estate, but he did not raise this in his opposition brief as a reason that the sum should be considered "unitary." *See* (Docket #23 at 5–6).

only where the defendant's contacts with the forum state "directly relate to the challenged conduct or transaction." *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010).

The sole allegation connecting Movants with the State of Wisconsin was their decision to preserve Judge Propes' sanctions award by filing proofs of claim and an adversary complaint for nondischargeability in Novoselsky's ongoing bankruptcy proceedings in this district. *See* (Docket #1 ¶ 7) ("[T]he dispute over the sum in controversy in this complaint arises from claims brought against Plaintiff by Defendants seeking relief against Plaintiff in the Courts of the Eastern District of Wisconsin."). Those actions have nothing at all to do with Novoselsky's claims in this case.

As the allegations of the complaint itself make clear, this case rests entirely on the parties' interactions in Illinois. Novoselsky engaged in sanctionable conduct there, Judge Propes' sanctions award was issued there, and the parties disputed the legality and interpretation of the sanctions award there. *Id.* ¶¶ 8–11. Indeed, even the several other cases that Novoselsky thought had some bearing on the sanctions award were all either Illinois state or federal cases. *See id.* ¶¶ 12–28. Although not relevant to the propriety of personal jurisdiction over Movants, it is worth noting as well that the breach-of-contract claim against the Estate was likewise based solely in agreements and conduct that occurred in Illinois. *See id.* ¶¶ 29–33. Thus, while it is true that Movants sought to reap their sanctions award from Novoselsky's bankruptcy estate, *his claims* regarding the sanctions award have no connection whatsoever to this State. Personal jurisdiction over Movants was not plausible in this case. *See Burger King*, 471 U.S. at 474–75 (a defendant must have sufficient contacts with the forum, related to the

suit at bar, that it "should reasonably anticipate being haled into court [in the forum State]" on that suit).

Novoselsky's opposition to Movants' motion to dismiss did not help matters. It was scattered, incoherent, and quite clearly the product of no meaningful legal research. For instance, without any citation to authority, Novoselsky maintained that the Declaratory Judgment Act "on its face does provide for jurisdiction." (Docket #23 at 5). This is simply not true.

The brief also fell well short on the matter of personal jurisdiction. Novoselsky stressed that Movants tried to obtain sanctions despite—for reasons he did not cogently explain—the need for those sanctions to be paid to the Estate. *Id.* at 8–9. This, he reasoned, represented Movants' affirmative choice to enter Wisconsin and fight Novoselsky here over the sanctions award. *See id.* But here again, his brief is devoid of appeal to any authority other than, apparently, his own intellect.

Likewise, as to the amount-in-controversy argument, Novoselsky again cited no law at all but simply noted that the sanctions award would be paid with interest. *Id.* at 5–6. A modicum of research on the point would have revealed the error in his view, as shown above. Similarly, his vague musings about the sanctions awards forming "unitary sum" were not backed up by even one citation to legal authority. In short, the Court reads Novoselsky's brief, like his complaint, as having been fired off his keyboard with precious little thought, revision, or research.

As Movants point out, "Novoselsky's proposed sur-reply cured nothing and added nothing." (Docket #35 at 6) (citation omitted). First, it raised no arguments about these three matters, instead focusing on the *Rooker–Feldman* issue. Further, as the Court noted in the context of the dismissal order itself, "[t]he brief cites no law whatsoever; it consists of

eight pages of Novoselsky's stream-of-consciousness musings." *Novoselsky*, 2017 WL 3025870, at *4 n.2. The Court concluded that the sur-reply should not be allowed, as it "add[ed] nothing to the record and ha[d] no effect on the disposition of the case." *Id.*

Litigants of all kinds—and perhaps especially lawyer-litigants— should be expected to conduct reasonably careful research in finding that jurisdictional premises for suit are satisfied. Novoselsky did not do so, and that failure is worthy of sanctions. Movants' cited cases support this view. First, in *International Shipping Co., S.A. v. Hydra Offshore, Inc.*, 875 F.2d 388, 393 (2d Cir. 1989), plaintiff's counsel was sanctioned for filing a complaint that on its face ran afoul of the complete diversity requirement of 28 U.S.C. § 1332. In particular, he had named aliens on both sides of the dispute, thereby clearly and unequivocally destroying diversity. *Id.* at 391. The jurisdictional defect was unmistakable to a reasonably prudent lawyer. *Id.*

Even more apt is a comparison to a prior instance in which a federal court meted out sanctions against Novoselsky. In *MB Financial, N.A. v. Stevens*, 678 F.3d 497, 498 (7th Cir. 2012), the Seventh Circuit affirmed a sanctions award against Novoselsky for frivolously removing an Illinois state case to federal court. The problems with removal were manifold— Novoselsky was not a party in the state case, much less a defendant; he did not secure any of the defendants' consent to remove; removal was not proper because the defendants were all Illinois citizens; and the time for removal had long since expired. *Id.* at 498–99.

Here, as in numerous prior cases, Novoselsky offered outlandish jurisdictional claims backed up by uninformed, spurious arguments. The problems in this case would be plain to any lawyer of reasonable ability after consultation with pertinent authorities. Novoselsky apparently

eschewed those authorities in favor of his own beliefs about what the law is. Consequently, the Court finds that Novoselsky's jurisdictional contentions in this case were frivolous, violated Rule 11(b)(2), and are deserving of an appropriate sanction.[7]

### 2.4    Novoselsky's Unclean Hands Defense

Astoundingly, Novoselsky offers no opposition whatsoever to Movants' arguments about his specific frivolous contentions. Rather, he says that sanctions should not be allowed because he had no improper purpose and because Movants come to the Court with unclean hands. (Docket #39 at 9). His allegations are wide-ranging, but the gist of them is that Movants—and especially Stevens—are to blame for not informing him about developments in the state cases and for not settling the underlying death case. The Court need not consider the matter of Novoselsky's improper purpose, for as explained above, his complaint is separately sanctionable for its frivolousness. *See supra* Part 2.1. The unclean hands defense, however, deserves some mention.

The decisions Novoselsky cites do not support his belief that Movants' allegedly unclean hands are relevant to the Court's sanctions

---

[7]While Movants' focus is on Rule 11 as a basis for sanctions, they propose that sanctions would, in the alternative, be permissible under 28 U.S.C. § 1927 or the Court's inherent authority. Section 1927 empowers courts to punish any lawyer or litigant who "multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. Similarly, a court has the inherent authority "to manage judicial proceedings and to regulate the conduct of those appearing before it, and pursuant to that authority may impose appropriate sanctions to penalize and discourage misconduct." *Ramirez, T&H Lemont, Inc.*, 845 F.3d 772, 776 (7th Cir. 2016); *Chambers v. Nasco, Inc.*, 501 U.S. 32, 47 (1991). Because Movants request only an award of attorney's fees and expenses, and because such an award is appropriate under Rule 11, the Court does not decide whether a sanction would be appropriate under Section 1927 or the Court's inherent authority.

determination. The first, *Thomas v. Schwab*, Civil Action No. 09–CV–13632, 2012 W.L. 6553773, at *1 (E.D. Mich., Dec. 14, 2012), dealt with a situation in which the defendant, having failed to comply with Rule 11(c)(2), sought to work around that failure by asking for sanctions under the court's inherent authority. *Id.* The court declined, noting that defendant blatantly disregarded the requirements of Rule 11 and should not be rewarded for doing so. *Id.*

In this case, unlike *Thomas*, Movants have complied with the requirements of Rule 11. That Rule imposes an objective standard of conduct. *See Chambers v. Nasco, Inc.*, 501 U.S. 32, 47 (1991). Its focus is on the representations a party or his advocate makes to the Court. Whether the movant has its own faults is of little consequence. *SFM Corp. v. Sundstrand Corp.*, 102 F.R.D. 555, 560 (N.D. Ill. 1984) (an unclean hands defense has no relevance to Rule 11 relief because it "is not equitable in nature" and does not turn on the movant's behavior). A court's inherent authority, by contrast, is equitable in nature, and therefore its exercise can be colored by equitable doctrines such as unclean hands. *See S. Shore Ranches, LLC v. Lakelands Co., LLC*, No. 1:09–cv–105 AWI DLB, 2010 WL 2543112, at *6 (E.D. Cal. June 18, 2010). Thus, to the extent *Thomas* supports the application of an unclean-hands defense to sanctions awarded under a court's inherent power, it does not translate to the Rule 11 context.

Novoselsky's only other citation, *Lam v. City of Cleveland*, Case No. 1:16CV1563, 2017 W.L. 3318315, at *2 (N.D. Ohio Aug. 3, 2017), is similarly inapposite. There, the court declined to issue Rule 11 sanctions, finding that the offending party's conduct was not objectively unreasonable. *Id.* The court then noted that while the movant alleged procedural violations, he had committed a few of his own. *Id.* Yet, not only was this dictum,

Novoselsky offers no contention that Movants violated a rule of procedure in this case. Thus, *Lam* too is unpersuasive. The Court finds no support for the notion that it can refuse Rule 11 sanctions in their entirety based on a claim of unclean hands in the movant. This finding renders much of the remainder of Novoselsky's brief—a five-page diatribe about how Novoselsky is the real victim here—irrelevant.

### 2.5    The Proper Sanction

The Court, having considered the parties' arguments and the record as a whole, finds that an award of attorney's fees against Novoselsky is required under Rule 11 "to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4).[8] As explained above, that Subpart of the Rule gives the Court wide discretion to fashion an appropriate penalty, which may include "nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." *Id.*

A district court enjoys broad discretion in arriving at a sanctions award that it believes will serve the deterrent purpose of Rule 11. *See Divane v. Krull Elec. Co.*, 319 F.3d 307, 314 (7th Cir. 2003); *Fries v. Helsper*, 146 F.3d 452, 459 (7th Cir. 1998) (noting that district courts have "significant discretion in determining what sanctions, if any, should be imposed for a

---

[8]Movants request that sanctions be entered jointly against Novoselsky and his law firm. (Docket #35 at 12). A law firm is generally responsible for the Rule 11 violations of one of its members who represents a party to a case. *See* Fed. R. Civ. P. 11(c)(1). Here, however, Novoselsky proceeded *pro se*, despite his repeated and misguided references to representing himself through his firm. Thus, the law firm was never actually involved in this matter.

violation, subject to the principle that the sanctions should not be more severe than reasonably necessary to deter repetition of the conduct by the offending person(s)." (citation omitted)). The primary goal of sanctions under this Rule is not to reimburse the movant dollar-for-dollar, but instead to punish the violator and deter future misconduct. *See Brandt v. Schal Assoc., Inc.*, 960 F.2d 640, 645 (7th Cir. 1992). That said, paying the reasonable attorney's fees and expenses of one's opponent can ensure that abusive litigants think twice. *Id.*

In this case, Novoselsky proffered baseless claims, Movants challenged them, and Novoselsky's responses were flaccid, rambling, and, most importantly, revealed that his claims were unsupported in law or fact. As a consequence, the Court will award Movants their reasonable attorney's fees and expenses incurred in this case, with the exclusion of any fees or expenses incurred in connection with the sanctions request itself. While the bulk of Novoselsky's contentions in his opposition to Movants' sanctions request was unpersuasive, the Court did find some of his points to have merit, particularly on the important issue of whether the Court could consider allegations of improper purpose under Rule 11(b)(1). Moreover, given the substantial body of filings in this case so far, the Court is confident that a reasonable attorney's fee for the non-sanctions-related work will be more than sufficient to deter future misconduct.

Novoselsky asks the Court to deny Movants' request for sanctions outright because they did not attach copies of counsel's timesheets or other documents substantiating a claim for monetary relief. (Docket #39 at 5–8). Yet in the same breath, Novoselsky acknowledges that the Court has the discretion to order a second round of briefing on the question of the amount of an appropriate sanction. *Id.* That is the course the Court will take in this

instance. *See* Fed. R. Civ. P. 11. The Court will, therefore, set forth a separate round of briefing for Movants to state the amount of the monetary sanction they seek.

Novoselsky's request is based on a suggestion that Movants' counsel will inflate his fee request in this case, as he was found to do in a prior appeal to the Seventh Circuit. (Docket #39 at 5–8); (Docket #39-2 at 2). To be sure, the Court will police any such padding in its review of the fee petition. The Court warns both parties that their submissions should be brief, focused on the narrow issues at hand, and should not devolve into the "grudge match" that played out before the Court of Appeals. (Docket #39-2 at 2). Further, Movants must offer adequate evidentiary and legal support as to each claimed amount.

**3.    CONCLUSION**

Sanctioning litigants is a serious matter, not to be undertaken unless the facts clearly call for it. The Court finds that sanctions are undoubtedly appropriate in this case. For David Novoselsky, a bankrupt lawyer who has spent the last decade of his life trying one failed ploy after another to get a share of the tragic Zvunca case, all the while alienating his former clients and colleagues alike, perhaps one more sanction will mean little. Yet in this Court's view, it is the proper course to at least try to dissuade him and others like him from future misconduct.

Accordingly,

**IT IS ORDERED** that Plaintiff's expedited motion for leave to file declaration *instanter* (Docket #40) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendants F. John Cushing, III and Jeanine L. Stevens' motion for sanctions (Docket #35) be and the same is hereby **GRANTED in part** as stated herein; and

**IT IS FURTHER ORDERED** that Movants shall, within **fourteen (14) days** of the date of this Order, file a separate motion itemizing and supporting, with appropriate evidence and citation to authority, their fees and expenses incurred in this matter, with the exclusion of their fees and expenses incurred in connection with the sanctions motion itself. Plaintiff shall respond to the fee petition no later than **fourteen (14) days** from the date it is filed, and Movants may reply within **five (5) days** thereafter. Movants' motion and Plaintiff's response shall not exceed fifteen (15) pages in length, and Movants' reply shall not exceed ten (10) pages.

Dated at Milwaukee, Wisconsin, this 29th day of December, 2017.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge